IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RECEIVED AND FILED
2005 MAY 31  PM 12: 55

CLERKS OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

[18]  MIGUEL A. VEGA-COSME,          Civ. No. _____
              Petitioner,
                                     [Cr. No. 97-076-DRD]

vs.


UNITED STATES OF AMERICA,
         Respondent,

_____/


### MEMORANDUM OF LAW IN SUPPORT OF
### PETITIONER'S MOTION TO VACATE, SET ASIDE OR
### CORRECT SENTENCE PURSUANT TO 28 USC § 2255

**TO THE HONORABLE COURT:**

**NOW COMES,** the Petitioner, Miguel A. Vega-Cosme, pro-se, and
respectfully files this Memorandum of Points and Authorities in
support of his motion to vacate, set aside, or correct his sentence
pursuant to 28 U.S.C. § 2255.

### I.  HISTORY OF THE CASE

**a)  Proceedings and Dispositions:**

    Petitioner (and his son) was named in a two-count Superseding
Indictment.  Petitioner was charged only in Count Two of said
Indictment which set forth the following:  Count Two = Conspiracy
to possess with intent to distribute in excess of One (1) kilograms
of heroin, in excess of five (5) kilograms of cocaine, and in excess
of one hundred (100) kilograms of marihuana, all in violation of
21 U.S.C. §§ 846 and 841(a)(1).

Petitioner and his son, along with nine (9) other co-defendants, proceeded to trial in Decmeber of 1998. On June 25, 1999, after a six-month trial, the jury returned a general verdict of guilty on Count II, as to Petitioner and his son.

On February 4, 2000, the sentencing hearing was held and Petitioner was sentenced to life imprisonment, plus five (5) years supervised release. A timely Notice of Appeal was subsequently filed.

On November 20, 2003, the First Circuit affirmed the district court's decision. See, **United States v. Soto-Beniquez**, 350 F. 3d 131 (1st Cir. 2003). A request for rehearing en banc was filed on January 8, 2004, and rehearing was denied on January 22, 2004. See Superseding opinion reported at 356 F. 3d 1 (1st. Cir. 2004).

A Petition for a Writ of Certiorari was denied on June 1, 2004, and a Petition for rehearing the petition for writ of certiorari was denied on August 6, 2004. On November, 2004, a Motion to recall mandate was filed; and on December 10, 2004, the motion to recall mandate was denied. A Petition for a writ of certiorari to review the denial of the motion to recall mandate was filed on January 6, 2005, and placed on the docket on January 26, 2005. On February 28, 2005, the petition for a writ of certiorari was denied.

b) **Statement of facts:**

The charges and convictions in this case were the result of an investigation by the authorities in Puerto Rico of the alleged drug activities occurring in the "Barriada Bituamul" area of Hato Rey, Puerto Rico. According to the authorities, the object of the alleged conspiracy was the distribution of heroin, cocaine, crack,

2

and marihuana from vaious "drug points" throughout the area.
Petitioner Vega-Cosme was said to be the owner of one of these
"drug points", while his son Vega-Colon, was said to be involved
in the packaging and distribution of drugs at said "drug point."

On December 14, 1998, pursuant to the Sixth Amendment of the
United States Constitution that: "In all criminal prosecutions,
the accussed shall enjoy the right to a speedy and public trial,
by an impartial  jury of the State and district wherein the crime
have been committed,..." the Petitioner and his son, along with
nine other co-defendants, proceeded to trial.

On June 25, 1999, the jury found the Petitioner guilty of
conspiracy to possess with intent to distribute in excess of one
(1) kilogram of heroin, in excess of five (5) kilograms of cocaine,
in excess of 50 grams of crack, and in excess of one hundred (100)
kilograms of marihuana.

Petitioner was sentenced on February 4, 2000.  During the
sentencing hearing the court heard objections as to:  (i) the
application of USSG § 2D1.1(d), which called for cross-referring
the first-degree murder guidelines if a victim was killed; (ii) the
drug-quantity calculation [USSG § 1B1.3]; and (iii) role in the
ofense [USSG § 3B1.1(b)].

After hearing arguments as to the relevant sentencing enhance-
ments, the court made the following findings:  (i) the cross-
reference was not applicable to Petitioner, thereby removing the
base offense level of forty-three (43); (ii) that the evidence
was sufficient to attribute over 1.5 kilograms of "crack" to
Petitioner, thereby establishing a base offense level of thirty-

3

eight; (iii) the record reflects that there existed over five participants in the conspiracy, thereby warranting 3-points for the role in the offense; and (iv) 2-point upward enhancement for the weapons possessed by others.

This was so even though the original Presentence Report did not set forth that these enhancements were to be considered and there was only an enhancement for murder in this case. [See; Sent. Tr., p.3, L. 8-9]. In spite of the lack of notice as to these upward enhancements, and over the defense counsel and defendant's objections, the court added these points to the sentencing calculation. With a Total Offense Level of forty-three (43), and Criminal History Category III, Petitioner was sentenced to life imprisonment.

In the direct appeal which followed, the following issues were presented for review: (i) the Petitioner asserted that his sentence was improper, as he was found guilty pursuant to a general verdict on a multiple-object conspiracy, and the statutory maximum sentence available for the marihuana was significantly lower than those for heroin, cocaine and "crack"; (ii) Petitioner and his son challenged the ultimate sentences imposed upon them as being contrary to the U.S. Supreme Court decision in **Apprendi v. New Jersey**, 530 US 466 (2000); (iii) that there existed insufficient evidence to establish that they were participants in the charged conspiracy, due to unreliability of the testimony, along with government's presentation of evidence showing multiple conspiracies; and (iv) that the court was clearly erroneaous in assessing a 2-point upward adjustment to Petitioner offense level for his alleged possession of a firearm during the offense.

4

On November 20, 2003, the First Circuit affirmed the decisions of the district court. On rehearing the slip opinion of the First Circuit issued on November 20, 2003, was modified with the insertion of additional text at page 92 [ninety-two] line 19 [nineteen] because Vega-Cosme clarified and expanded on his original claim that a multiple-object conspiracy was charged. The Court stated: "We still reach the issue because what is at stake is the difference between the life sentence Vega-Cosme received and the forty years maximum for the marihuana-only conspiracy." Finally, the First Circuit denied relief.

A petition for a writ of certiorari was denied on June 1, 2004. Also, a petition for rehearing petition for writ of certiorari was denied on August 6, 2004. Subsequently, a motion to recall mandate was filed and denied on December 10, 2004. A petition for a writ of certiorari was filed on January 6, 2005 and placed on the Supreme Court docket on January 26, 2005. On February 28, 2005, the petition for writ of certiorari was denied. This motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 ensued.

## II.    ARGUMENT

28 U.S.C. § 2255 requires a prisoner's sentencing court to release him or her if the prisoner's sentence was imposed in violation of the Constitution or laws of the United States, if the Court was without jurisdiction to impose the sentence, if the sentence exceeded the maximum authorized by law, or if the sentence is otherwise subject to collateral attack. The statute provides that if the court finds for the prisoner, it may resentence him or her or set the conviction aside, as is appropriate.

A.   **PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.**

Claims of ineffective assistance of counsel raise a cognizable constitutional issue that can serve as the basis of a motion under § 2255.  See **U.S. v. De-La-Cruz,** 299 F. 3d 5, 15 (1st Cir. 2002); also, see **U.S. v. Giardino,** 797 F. 2d 30, 31 (1st Cir. 1986). The Sixth Amendment to the United States Constitution provides that in criminal prosecutions the accused shall have the right to the assistance of counsel for his or her defense.  The United States Supreme Court has held that this right includes the right to effective assistance of counsel.  **McMann v. Richardson,** 397 U.S. 759, 771 n. 14, 90 S. Ct. 1441, 25 L. Ed 2d 763 (1970).  Pursuant to this Constitutional mandate, a defendant is entitled to reasonably competent assistant of counsel from pre-plea investigation and preparation through advocacy at sentencing.  **U.S. v. Garcia,** 698 F. 2d 31, 33-34 (1st. Cir. 1983).

To prevail  on a claim of ineffective assistance of counsel, a habeas petitioner must show:  (1) that counsel's performance was deficient, or that counsel made errors so serious that counsel was not functioning as the "counsel guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense.  **Strickland v. Washington,** 466 U.S. 668, 687 (1984); **Ourber v. Guarino,** 293 F. 3d 19, 25 (1st Cir. 2002).

The **Strickland** test has, however, been modified by **Hill v. Lockhart,** 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed 2d 203 (1985) to evaluate challenges to guilty pleas based on ineffective assistance of counsel in the plea process.  **Id.**  This test is also applicable in cases where the defendant is alleging that counsel's

incompetence caused him to proceed to trial instead of pleading
guilty.

1.    In the present case, the Petitioner's trial counsel rendered
ineffective assistance by failing to pursue and advise Petitioner
to accept one of the several plea offers made by the government.

Petitioner was arrested and charged with violation of 21 U.S.C.
§ 846.  The Petitioner hired attorney Rosa I. Bonini-Laracuente to
defend him.  [See Cr. Dock. No. 7].  Petitioner was arraigned on
4-15-97, at which time he pleaded not guilty to the charged violation.
[See Cr. dock. No. 21].  Thereafter, attorney Bonini communicated
to Petitioner three (3) separate plea offers allegedly made by the
government.  The first offer, allegedly made by A.U.S.A. Miguel
Pereira, offered a twelve (12) year sentence.  The second offer,
allegedly made by A.U.S.A. Jacabed Rodriguez Coss, offered a twenty
(20) year sentence and, the third offer, allegedly made by Jacabed
Rodriguez-Coss, offered the same twenty (20) years sentence.

Petitioner informed counsel Bonini that he was willing to
accept one of the government's offers.  However, this plea was
never pursued nor reduced to writing.  When Petitioner asked about
the first twelve (12) year offer, Ms. Bonini responded that Mr.
Pereira has been removed from the case because Ms. Rodriguez-Coss
has returned from her maternity vacations.  Petitioner requested
Ms. Bonini to pursue the first offer with Ms. Rodriguez-Coss.  But,
counsel Bonini refused to do so, and stated:  "Yo no voy hablar
mas con esa flaca hija del Diablo."  Counsel Bonini could have but
did not pursue none of these offers.  In addition, counsel Bonini
never gave her informed opinion on whether the plea offer had merit

or should be considered, much less accepted. Nor did she reduce any recommendations with respect to accepting the government's plea offers to a written instrument nor to a letter. And counsel did not advise, let alone strongly advise, Petitioner to accept the government's offer.

A defense attorney's failure to notify his client or pursue a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the first element of the **Strickland/Hill** test. See, e.g., **United States v. Baylock**, 20 F. 3d 1458, 1465-66 (9th Cir. 1994); also see, **United States v. Rodriguez-Rodriguez**, 929 F. 2d 742, 753 (1st Cir. 1991)("there is authority which suggests that a failure to defense counsel to inform defendant of a plea offer can constitute ineffective assistance of counsel on grounds of incompetence alone, even absent any allegations of conflict of interest."

Counsel's omissions set forth in the above-parragraph were not the result of reasoned decisions based on strategic or tactical choices among all pausible options available to counsel for the defense of Vega-Cosme during the pre-trial process. Simply put, an attorney acting pursuant to the objective standard of the Sixth Amendment would have advised Petitioner Vega-Cosme to enter a timely plea of guilty instead of proceeding to trial where the result could be a verdict of Guilty.

## 2. The Second Half Of The Strickland/Hill Test, The "Prejudice Requirement."

Petitioner Vega-Cosme was prejudiced by the objectively unreasonable performance of counsel Bonini during the pre-trial

process because, absent the constitutionally deficient performance, there is a reasonable probability Petitioner would ahve pleaded guilty instead of proceeding to trial. More specifically, had Petitioner pleaded guilty instead of proceeding to trial, there is a reasonable probability he would have received a sentence of 144 months incarceration instead of the sentence of life incarceration which he received after trial.

Given the wide disparity between the first communicated plea offer (12 years) and the probable punishment if convicted at trial (life imprisonment), Petitioner Vega-Cosme was entitled to more than merely being communicated a plea offer; at minimum, he was entitled to a minimum level of effective assistance by counsel Bonini pursuing that plea with the Government. Counsel did neither.

Counsel's initial rendering of ineffectiveness was further compuonded where she did not pursue the second or third plea offers, nor strongly advise Petitioner to accept one of them. A defendant in a criminal case has the constitutional right to be fully advised about all plea offers and discussions, and then to receive "counsel's informed opinion as to what pleas should be entered." See, e.g. **Boria v. Keane,** 99 F. 3d 492, 497 (2d Cir. 1996).

Counsel's omissions set forth in the above-paragraphs were the result of counsel's <u>abdication</u> of the duty and responsibility to advocate Petitioner's case and cause during the pre-trial process. **Boria,** interpreting the seminal ineffective-assistance-of-counsel case of **Strickland v. Washington,** 466 U.S. 668 (1984), holds that where counsel does not provide such information, advice and professional opinion to the defendant counsel has performed ineffectively.

Based on the foregoing facts and law, this Court should find that Petitioner has stated a prima facie claim of "prejudice" in the pre-trial process sufficient to entitled him to an evidentiary hearing to enable him to prove his case.

B.  **WHETHER COUNSEL BONINI RENDERED INEFFECTIVE ASSISTANCE DUE TO CONFLICT OF INTEREST?**

As discussed above, to establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's actions fell below the applicable standard of performance and (2) that prejudice resulted.  **Carey** 50 F. 3d at 1100.  When a defendant can demonstrate that (1) his or her counsel had an actual conflict of interest (2) which adversely affected his or her performance, the first prong on the above test is met.  Id.

If the defendant can prove this, he or she need not establish prejudice because it will be presumed under the circumstances.  **Cuyler v. Sullivan,** 446 U.S. 335, 349, 100 S. Ct. 1708, 64 L. Ed 2d 333 (1980).  To establish an actual conflict of interests, the defendant must show that (1) his or her lawyer could have pursued a pausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not pursued, due to the attorney's other interests or loyalties.  **Carey,** 50 F. 3d at 1100.  When an attorney fails to pursue a vigorous defense because he fears that doing so will uncover evidence or prompt testimony revealing his own crimes and subject him to possible prosecution, the requisite showings for a conflict of interest exist.  **U.S. v. Cancilla,** 725 F. 2d 867, 870 (2d Cir. 1984).

In the case at bar, there exists a specter of a conflict of interest on the part of the Petitioner's trial counsel because counsel and her son were subject of a federal criminal investigation during pre-trial and trial proceedings in Petitioner's case, and which this involved conflict putting attorney's personal interests against those of Petitioner.

## 1. Actual Conflict

From an unknown date until on or about late 1999, the United States Attorney's Office for the District of Puerto Rico opened a criminal investigation into possible drug conspiracy charges against counsel Bonini and her son. On 1998, the Government subpoenaed counsel and her son to appear and testify before a Grand Jury of the United States District Court for the District of Puerto Rico. This subpoena was counsel's first notice of the Government's investigation.

On or about 9-16-98, the Government filed an Informative Motion as to all defendants in Petitioner's case regarding plead offers. The Petitioner informed counsel Bonini that he was willing to accept one of the Government's offers, and requested counsel to pursue the first offer with Ms. Rodriguez-Coss. However, counsel refused to pursue this plea negotiation on behalf of Petitioner. Counsel's omissions set forth here were not the result of reasoned decisions based on strategic or tactical choices among all pausible options available to counsel Bonini for the defense of Petitioner during the plea process.

Counsel's omissions were the result of counsel's abdication of the duty and responsibility to advocate Petitioner's case and

**11**

cause during the plea process because counsel knew she was under investigation, and was faced with an uncertain situation with respect to her own criminal liability, i.e., not knowing when, how, or if, the Government was going to prosecute her or her son.  Thus, counsel had an incentive to impede plea negotiations between the Government and Petitioner because Petitioner possessed information harmful to counsel and her son.

It is the existence of this undeniable uncertainty regarding counsel's own liberty and financial interests before and during Petitioner's trial and counsel's knowledge of this uncertainty that gives rise to the actual conflict in this case.  See Petitioner's Affidavit in support to this claim.

Based on all of the foregoing, this Court should find that Petitioner has stated a prima facie claim of conflict of interest and, that the **Cuyler** standard has been met:  Counsel had an actual conflict of interest that adversely affected her performance in representing Petitioner.

## C.   COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY REQUESTING THAT PETITIONER WERE JOINED TO THE CCE-DEFENDANTS.

In the present case, counsel rendered ineffective assistance not only by failing to pursue, fully advise or conflict of interests. But, also, by requesting that Petitioner were joined to the leadership group.

On December 28, 1998, prior to jury selection, the Court considered the government's proposal to sever the fourteen defendants that would be going to trial in the case into two groups.  [Tr. Dec. 28, 1998, p. 4-18].

"The Court:  It is a problem of a--it's a physical problem, but also it's a problem that the attorneys will not be able to speak with their clients effectively and we could have a Sixth Amendment problem here.  So, rather than 16, we're going to have to curtail it.  Now let me hear your suggestions on curtailing this case."

"Ms. Rodriguez:  The United States would propose that Court sever out the defendants remaining in the indictment after the first ten defendants on the indictment are counted."

Tr. Dec. 28, 1998, p. 4-8.

The government's proposal envisioned "trying the senior conspirators together, that is the principal leaders, and the organizers and supervisors of the conspiracy will be tried together... trying the conspirators who planned and carried numerous acts of violence within the conspiracy together."  [See, Tr. 12-28-98, P.5].

In the indictment, Petitioner was named as defendant number [18], and was suppossed to be tried in the second group.  However, Petitioner's counsel requested that he be included in the CCE-group. This request by counsel was made against Petitioner's will. Petitioner told his counsel that he wanted to be in the second group and seek the opportunity to plea guilty.  Counsel Bonini refused Petitioner's request and included Petitioner in the first group  for trial.

Not withstanding that Petitioner's counsel knew that, at best, the Petitioner had limited participation in the conspiracy it included him in the leadership group.  This misjoinded made at the request of Petitioner's counsel resulted in Petitioner being tried in the first group consisting of eleven supposed leaders, principals, and organizers, rather than the second group of less

culpable defendants.

The evidence adduced during the "leadership" trial included extensive evidence of murders, and violent crimes in which Petitioner did not participate. Through this misjoinder the government was able to place Petitioner Vega-Cosme in the same footing with defendants who would regularly hunt down and murder rivals as to warranted being charged with CCE.

It is respectfully submitted that Petitioner was prejudiced by the spillover effect of being tried jointly with the "leadership group." Counsel could have but did not wait for the second group, and pursue the plea offer rather than going to trial with the CCE-defendants, as such counsel's performance fell below the objective standard of reasonableness required by the Sixth Amendment and prejudice should be presumed.

Based on the foregoing, together with the allegations of the previous paragraph incorporated by reference and the supporting evidence in the Appendix of Exhibits, Petitioner was prejudiced by the objectively unreasonable performance of counsel. There is a big difference between the sentence of life which he received after being tried with the CCE group and the sentence allowing potential freedom some day which Petitioner could have obtained through a plea of guilty with the second group.

Therefore, Petitioner's sentence should be vacated, set aside or corrected, or at least an evidentiary hearing should be granted.

14

D.  **SENTENCING:**

1.  **Counsel Was Ineffective by Failure To Object To Sentencing On The Ground That The Sentence Exceed The Statutory Maximum For The Lesser Crime Or "Object" Charged In The Conspiracy.**

It is setted that a § 2255 motion may not revive issues previously determined on direct appeal. **Dirring v. U.S.**, 370 F. 2d 862, 864 (1st Cir. 1967). Although similar arguments to those made herein regarding errors in the Petitioner's sentencing were presented to the First Circuit on Petitioner's direct appeal, the Petitioner did not argue to the First Circuit that he was denied his Sixth Amendment right to effective assistance of counsel. The Supreme Court said in **Massaro v. United States,** 538 U.S. 500, 123 S. Ct. 1690, 155 L. Ed 2d 714 (2003) that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later appropriate proceeding under § 2255." Also, See, **United States v. Mala,** 7 F. 3d 1058 (1st Cir. 1993). Therefore, this motion raises new issues which this Court must resolve.

In the present case, Petitioner was convicted of a conspiracy with multiple-objects, each of which potentially had a different "statutory maximum sentence." Petitioner was sentenced utilizing the higher "statutory maximum" sentence instead of the "lower one".

Where a defendant is convicted of a conspiracy with more than one "object", where one object of the conspiracy has a lesser "statutory maximum" sentence, the defendant can only be sentenced for the object which has the lesser statutory maximum, if it is imposible to tell from the jury verdict or instructions which

**15**

"object" of the conspiracy is the object upon which the jury based
its verdict. See **United States v. Rhynes,** 196 F. 3d 207 (4th Cir.
1999)(citing **Edwards v. United States,** 523 U.S. 511, 118 S. Ct.
1475, 140 L. Ed 2d 703 (1998) and **United States v. Orozco-Prada,**
732 F. 2d 1076 (2d Cir. 1984).

However, this Court should note that a challenge to a "sentence"
as a result of an "ambiguous verdict" is distinct from a challenge
to a "conviction" under these circumstances. **United v. Dale,** 178
F. 3d 429 (6th Cir. 1999).

In the instant case, the jury found Petitioner guilty of the
conspiracy charged in Count II, but the verdict form failed to
specify either the substance(s) he possessed, or the amount(s)
proven by the government, because it merely requested the jury to
check off "guilty" or "not guilty". [See Cr. dock No. 859]. As
the jury verdict is actually "ambiguous" as to which crime or object
of the conspiracy Petitioner Vega-Cosme was convicted, then he was
unlawfully sentenced. **U.S. v. Palazzolo,** 71 F. 3d 1233 (6th Cir.
1995)(Verdict form failed to distinguish the object of the conspiracy).

Petitioner's counsel contested the amount of drugs attributed
to him in the Pre-sentence Report by both filing a written objection
to the findings, and by arguing the issue at sentencing. [See, Cr.
dock. No. 1059 and Sent. Tr. p. 1-20]. However, the record does
not indicate that counsel ever objected to sentencing on the ground
that the sentence exceeded the statutory maximum for the lesser
crime or "object" charged in the conspiracy count. This failure
by counsel was in spite of the fact that **United States v. Quicksey,**
525 F. 2d 337 (4th Cir. 1975) and **United States v. Orozco-Prada,**

16

732 F. 2d 1076 (2d Cir. 1984) and **United States v. Garcia**, 37 F. 3d 1359, 1370 (9th Cir. 1994) were published law and available to counsel at the time of Petitioner's sentencing.

Where there is a reasonable probability that counsel's unprofessional omissions deprived a criminal defendant of a favorable downward adjustment, in the defendant's sentencing under the Sentencing Guidelines, the defendant's sentence is violative of the Sixth Amendment constitutional right to effective assistance of counsel and is, therefore, subject to collateral attack under 28 U.S.C. § 2255. As there is a probability that "but for counsel's unreasonable failure...[Vega-Cosme] would have prevailed," **Briseno v. Cockrell**, 274 F. 3d 204, 207 (5th Cir. 2001), in obtaining a lesser sentence. And, of course, "any amount of actual jail time has Sixth Amendment significance." **Glover v. United States,** 531 U.S. 198, 203, 121 S. Ct. 696, 148 L. Ed 2d 604 (2001). Petitioner's counsel provided ineffective assistance and Petitioner's Sixth Amendment right was violated. **U.S. v. Conley**, 349 F. 3d 837 (5th Cir. 2003).

a) **Factual Background:**

Petitioner provided the following summary of the record below to illustrate that an ample factual basis exists for the jury's presumed finding that the object of the conspiracy was marihuana. In 1997, Petitioner was charged with conspiracy to distribute heroin, cocaine, cocaine base and marihuana. [See Indictment Cr. 97-076-DRD; Count Two; [Tr. Dec. 28, 1998, p. 88-90] and [Tr. Jan. 22, 1999].

> "**The Court:** But the conspiracy is a conspiracy to distribute heroin, crack, cocaine and marihuana..."

Tr. Jan. 22, 1999 (emphasis added).

The Government presented evidence at trial that beginning in the 1990 and continuing through the 1994, Petitioner Vega-Cosme was a member of the "Barriada Bitumul's" conspiracy and that at various times sold or distributed each of the drugs in the indictment. As the Government argued at trial and acknowledged in its "Supplemental Statement of Facts" to the First Circuit, there was evidence regarding the distribution of heroin, crack cocaine and marihuana. [Govt's Supp. Stat. of Facts, p. 8-9]. The Government's evidence included the testimony of Victor Negron Maldonado, aka, Pitosito, who testified that he had observed drug dealings involving Petitioner and his son, at Calle Laguna's drug point:

Tr. Jan. 21, 1999, p. 104-105:

"Q= And what type of narcotics were sold at that point?"

"A= Crack was sold.  Five dollars cocaine.  Five and ten dollars marihuana."

(emphasis added).

After all the evidence was presented, the jury was instructed "as matter of law that cocaine, cocaine base ("crack") and heroin are narcotic drug controlled substances.  Marihuana is a controlled substance." [See Court's Inst. No. 16].  And was given a general instruction as to the elements of the offense; Conspiracy, 21 U.S.C. § 846.  The jury returned a general verdict finding Petitioner Vega-Cosme guilty of this conspiracy charge.

Of course, When the jury return a general verdict, the district court does not know exactly which drug the jury found to be the object of the conspiracy.  **Orozco-Prada** teaches that the jury is pressumed

to have found that the object of the conspiracy was the drug carrying
the lowest statutory maximum penalty.  The district court errs if it
applies, for example, the crack sentencing statute (which provides
for life sentence) when the jury found (either expressly or via
**Orozco-Prada** presumption) that the object of the conspiracy was
limited to marihuana, which carries only (5) years maximum sentence.
This is what happened in Petitioner's Vega-Cosme case.

Based on the foregoing facts and law, counsel was ineffective,
Petitioner was prejudiced in the sentencing process and he is
entitled to have his sentence vacated <u>or</u> at least an evidentiary
hearing to enable him to prove his claims should be Granted.

### E.  APPELLATE COUNSEL

Closely connected, and interwined with the previous issues,
is the issue of ineffective assistance in the Appeals Court.  A
defendant is entitled to effective assistance of counsel in his
direct appeal.  **Evitts v. Lucey,** 469 U.S. 387 (1985).

In the present case, appellate counsel raised the issue of the
general verdict on a multiple-object conspiracy as well as **Apprendi**
errors.  On November 20, 2003, the First Circuit affirmed the
decision of the district court.  See **U.S. v. Soto-Beniquez** 350 F. 3d
131 (1st Cir. 2003).

A petition for Rehearing en banc was filed.  On petition for
rehearing, Petitioner's appellate counsel clarified and expanded
on the original claim that a multiple-object conspiracy was charged.
The Circuit Court still reached the issue because **"Apprendi** errors,
like multi-object conspiracy errors, are of constitutional import."
But, as counsel failed to develop the argument, the Circuit Court

**19**

denied relief.  See, **U.S. v. Soto-Beniquez**, 356 F. 3d 1 (1st Cir. 2004).

Appellate counsel could have but did not explain to the Court that the **Orozco-Prada** error is not the failing to require the jury to make findings regarding drug type.  That the error occurs when the district court fails to apply the sentencing statute that governs the drug type determined by the jury to be the object of the conspiracy.  Because when the Government elects to ask the jury to return a general verdict, the district court does not know exactly which drug the jury found to be the object of the conspiracy, and thus, the jury is presumed to have found that the object was the drug carrying the lowest statutory maximum penalty. Armed with this answer, the district court must then apply the sentencing statute applicable to that type of drug.

Once the nature of an **Orozco-Prada** error is understood, the legal consequences on appeal become clear.  On appeal, the issue for the reviewing court is narrow and is entirely legal:  Did the district court correctly apply the sentencing statute governing the drug type found (either expressly or via **Orozco-Prada** presumptions) by the jury to be the object of the conspiracy?

No authority exists for the apparent proposition that this type of sentencing error can be excused on appeal with a harmless error analysis.  No procedural rule or statute authorizes an appellate court to exercise discretion when it comes to properly applying the law.  No court can rewrite the sentencing statutes, or pick and chose among the sentencing statutes applicable to various types of drugs.  Either the district court properly applied the sentencing

statute applicable to the drug type found by the jury or it did not.
In **United States v. Melvin,** 27 F. 3d 710 (1st Cir. 1994), the First
Circuit held "that jury verdict, which found defendants guilty of
using and carrying firearm in connection with crime of violence, but
which failed to designate which of six firearms at issue, ranging
from machine guns, carrying mandatory 30-years sentence, to handguns,
carrying mandatory 5-years sentence, were involved, did not establish
beyond reasonable doubt that jurors found that defendant violate
statute with mandatory minimum term greater than five years." 27 F. 3d
710 (1st Cir. 1994)(emphasis added).  By analogy, the same claim is
established here.  Counsel had no strategy reason not to explain it
to the Court and this was ineffective assistance of appellate
counsel.  **Evitts v. Lucey,** 469 U.S. 387 (1985).

F.  **PETITIONER'S LIFE SENTENCE VIOLATES THE FIFTH AND SIXTH
    AMENDMENT RIGHT TO JURY TRIAL ACCORDING TO APPRENDI, BLAKELY
    AND BOOKER.**

In the present case, the charged crime involved a conspiracy
to possess with intent to distribute in excess of one (1) kilogram
of heroin, in excess of five (5) kilograms of cocaine, in excess
of 50 grams of crack-cocaine and 100 kilograms of marihuana.

During the jury instructions, the defense requested a special
verdict as to amounts and types of drugs (at the time the jury was
charged) and it was rejected by the trial court.

> "And also, we would request a special verdict as to the nature
> and amount of the controlled substance because for sentencing
> purposes, Your Honor, that is a fact that should be decided by
> the jury as to the nature of the substance that they believe
> the defendant was involved with, in order for the Court to be

able to take that solid fact and adjudicate properly the
guideline range of my client."

Trial Tr. 6-25-99 p. 5-6.

However, the Judge instructed the jury that although the
Government must prove the defendant knew he distributed a controlled
substance, the Government does not have to prove the defendant knew
the exact nature of the substance that he distributed. It is enough
that the Government proves the Defendant knew he distributed some
kind of controlled substance. [See Jury Inst. No. 17].

Petitioner claimed on appeal that his sentence of imprisonment
for   LIFE   was imposed in violation of **Apprendi** because the
district court rather than the jury determined the quantity of drugs
involved. The First Circuit rejected this argument and found that:

> **Apprendi** does not require that the jury determine beyond a
> reasonable doubt the quantity of drugs foreseeable to each
> defendant. **Apprendi** requires only that juries determine facts
> necessary to increase the statutory maximum. Here the
> conspiracy-wide drug quantity determines the statutory
> maximum. See 21 U.S.C. § 846 (holding each conspirator
> responsible for the quantity of drugs distributed by the
> conspiracy. As long as the sentence falls within this statutory
> maximum, the district court may determine the quantity of drugs
> reasonably forseeable to each defendant by a preponderance of
> the evidence and sentence each defendant accordingly.
> **Derman v. United States,** 298 F. 3d 34, 42-43 (1st Cir. 2002).

See: **U.S. v. Soto-Beniquez,** 356 F. 3d 1 (1st Cir. 2004).

However, in **Blakely v. Washington,_____U.S._____,** 124 S. Ct.
2531,_____L. Ed 2d _____(2004), the Supreme Court clarified that
**Apprendi** applies anytime facts supporting a criminal defendant's
sentence are neither admitted by the defendant in a plea colloquy

22

nor found by a jury. The Court added that the "statutory maximum"
for **Apprendi** purposes is the maximum sentence a judge may impose
soley on the basis of the facts reflected in the jury verdict or
admitted by the defendant. Id. 2004 US Lexis 4575 at **14.

Here, the jury determined beyond a reasonable doubt that
Petitioner conspired to possess "one (1) kilogram of heroin, five
(5) kilograms of cocaine, fifty (50) grams of crack-cocaine, and
one-hundred (100) kilograms of marihuana, as stated on the indict-
ment. See Judge Dominquez's statements during trial:

> "The Court" But the conspiracy is a conspiracy to distribute
> heroine, crack, cocaine and marihuana to the <u>quantities stated
> in the indictment.</u>

Tr. 1-22-99, p. 19. (emphasis added).

Thus, the "statutory maximum" in Petitioner's case was the
penalty that could be imposed on the basis of those quantities.
The guidelines for an 21 U.S.C. § 846 offense is found in U.S.S.G.
§ 2D1.1(c). That section provides that an offense involving at
least 5 kilograms but less than 15 kilograms of cocaine have a
base offense level of thirty-two (32). See U.S.S.G. § 2D1.1(c)(4).
However, during the sentencing hearing, the Judge made additional
quantity findings (by a preponderance of the evidence) under U.S.S.G.
§ 1B1.3, which increased the Petitioner's base offense level from
32 to 38, U.S.S.G. § 2D1.1(c)(1). The effect, together with that
of the enhancement that the Court applied for role in the offense
and possession of firearms placed the Petitioners in a sentencing
range of life imprisonment. The Court sentenced Petitioner to LIFE.

Here, as in **Blakely,** the sentence must be vacated because the
sentence that was imposed "could not have been imposed...soley on

the basis of the facts [determined by the jury beyond a reasonable doubt]." **Blakely**, Slip Opinion at 7.  [It's important to note that in **Blakely**, the facts determined "beyond a reasonable doubt" were those admitted in a guilty plea.  Here, Petitioner exercised his Sixth Amendment right to jury trial].

Therefore, it is respectfully submitted that the Court violated the Petitioner's Sixth Amendment right to jury trial on proof beyond a reasonable doubt when it made those findings under "preponderance of the evidence."  This is a matter which cannot be determined by the Court according to the Supreme Court decision in **Blakely v. Washington**.  This clarification of **Blakely** is being applied by this Honorable Court.  See, e.g. **United States v. Rivera-Calderon,** 354 F. Supp. 2d 86 (D. Puerto Rico 2005)(Hon. Judge Dominquez, adopting R&R of Velez-Rive, U.S. Mag. Judge).

Because the "statutory maximum" sentence that the Court could have imposed in this case (without an upward departure), had the judge not made the additional findings concerning quantity of drugs, sold in the offense and possession of weapons, would have been 151-188 months, given the Petitioner's base offense level of 32, U.S.S.G. § 2D1.1(c)(4), and the Criminal History of III, the Petitioner's LIFE sentence is unconstitutional and as in **Blakely** violates the Sixth Amendment of the United States Constitution.

The Petitioner's sentence must therefore be vacated set aside or corrected to 151 months of imprisonment.

## G.   THE SUPREME COURT'S DECISION IN BOOKER REQUIRES RESENTENCING:

In addition to the above, the rule of **Apprendi** applies to a sentence which, although within the maximum term of imprisonment

24

authorized by statute, exceed the maximum term of imprisonment authorized by the United States Sentencing Guidelines.

In **United States v. Booker,** 543 U.S. \_\_\_\_, 160 L. Ed 2d 621, 125 S. Ct. 738 (2005) the Supreme "Court held sentencing under Federal Sentencing Guidelines by judge-determined facts by preponderance violates the Sixth Amendment right to trial by jury. **Booker** invalidated the Guidelines both on a Sixth Amendment jury trial violation as well as the **Apprendi v. New Jersey's** due process doctrine.

Because **Apprendi** requires that all facts which must exist in order to subject the defendant to a legally prescribed punishment must be found by a jury (re-affirmed in **Blakely v. Washington,** and because the punishment to which Petitoner eventually became subject was based upon facts regarding drug quantity, role in the offense and firearm that were not found by a jury, his sentence must be vacated. Today, under **Booker,** as foreshadowed by **Apprendi/Blakely** a district court can not enhance a defendant's maximum sentence under the Guidelines based on facts neither admitted by the defendant nor found by the jury.

In **Booker**, the Supreme Court made clear that a sentencing judge violates the Sixth Amendment by finding facts and mandatorily using them to enhance a sentence above the Guidelines range that would have been applicable base solely on facts found by the jury. \_\_\_\_\_U.S. at \_\_\_\_\_, 125 S. Ct. at 750, 755-56. The Court also implicitly ruled, by its remand of the sentence imposed on **Duncan Fanfan,** id. at 769, that a sentencing judge commits error by mandatorily imposing a Guideline sentence even though it is based

only on facts found by the jury.

Based on all of the foregoing, and in light of the Supreme Court's decision in **United States v. Booker,** the district court's imposition of a mandatory sentence based on facts not admitted by the defendant or found by the jury violated Petitioner's Fifth Amendment right to due process and Sixth Amendment right to a jury trial, his sentence must be vacated.

### H..THE QUESTION REGARDING BLAKELY/BOOKER "RETROACTIVITY"?

The Petitioner has vigorously challenged the unconstitutional conviction and sentence entered in this case over the years. The matter was erroneously affirmed on direct appeal as the result of the First Circuit misinterpretation of "the statutory maximum" for **Apprendi** purposes. In **Blakely,** the Court re-affirmed and (clarified for those Courts, like the First Circuit that misinterpreted **Apprendi** the first time around) its previous holding in **Apprendi v. New Jersey** that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed stattory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

Specifically, in defining the term "prescribed statutory maximum", **Blakely** holds that "the statutory maximum sentence a judge may impose solely on the basis of  the facts reflected in the jury verdict or admitted by the defendant." **Blakely v. Washington,** 124 S. Ct. at 2537; (emphasis in original). Thus, in effect the Petitioner had no appeal because he was erroreously denied relief based in the matter reference supra.

Recently, in **United States v. Booker,** 543 U.S.____, 125 S. Ct.
738, ____L. Ed 2d ____(2005) the Supreme Court determined that Sixth
Amendment guarantee as explained by the Court in **Apprendi v. New Jersy,**
538 U.S. 584 (2000) applies to the guidelines.  The key wording in
the opinion is "Reaffirm." **Id**. The Court has not dictated any new
precedent or established any new constitutional rules.  The Court
has merely "extended" the holdings of **Apprendi** to the Sentencing
Guidelines.

The Supreme Court has previously determined in **Yates v. Aikens,**
484 U.S. 211 (1987) that "When a decision of the United states Supreme
Court has merely applied settled precedents to new and different
factual situations, no real question arises as to whether the later
decision should apply retroactively; in such cases, it is a forgone
conclusion that the later decision applies in earlier cases, because
the later decision has not in fact altered the rule in any way." Id.
**Yates,** at 217 and FN[3].

In essence the Supreme Court has merely applied the holdings
of **Apprendi** regarding the Sixth Amendment to the Guidelines via
the **Booker** decision.  [See, **U.S. v. Antonakopoulos,** 399 F. 3d at
75, II-A (Booker reaffirmed the principles of **Apprendi v. New Jersey**)].

Accordingly, the question on whether **Booker** applies to Petitioner's
2255 motion appears to be an issue that has been previously resolved.

In addition to the above, it is respectfully sumbitted that the
holding in **Booker** is directly applicable to Petitioner's case because
his sentence was still the subject of direct review when **Booker** was
decided.  In **Booker,** the Court noted: "...we must apply today's
holdings--both the Sixth Amendment holding and our remedial

interpretation of the Sentencing Act--to all cases on direct review."

It is respectfully submitted that under normal and traditional circumstances, a defendant has one year after the denial of certiorari by the Supreme Court to file a request for collateral relief (otherwise known as a § 2255, or habeas corpus petition).

The circumstances of Petitioner's case, however, are not "normal and traditional." First, the Petitioner filed a Pro-Se Petition for Rehearing Petition for Certiorari before the Supreme Court, which was denied on August 6, 2004. Subsequently, the Petitioner and several of his co-defendants filed a "Pro-Se Motion to Recall Mandate" before the First Circuit, some time after **Blakely** was decided. This motion was denied by the First Circuit panel that decided Petitioner's appeal, on December 10, 2004. Petitioner and several others then filed another Petition for Certiorari before the Supreme Court, which was filed on January 6, 2005, and placed on the docket January 26, 2005. On February 28, 2005, certiorari was denied.

Needless to say, this was a very "untraditional" course of action and that Petitioner's case was still pending "direct review" when **Blakely/Booker** were decided, and therefore the holdings in **Booker** are still applicable to Petitioner's sentence.

## I.   PETITIONER'S EXTRAORDINARY POST-CONVICTION REHABILITATION EFFORTS.

Having established that the holding in **Booker** is applicable to Petitioner's sentence, the court next considers the factors contained in 18 U.S.C. § 3553(a) and, in the excercise of its thus informed discretion, decide whether or not to modify the original sentence previously imposed. **Booker,** 543 U.S. ____, ____ S. Ct. ____, ____ L. Ed 2d ____ (2005).

The factors set forth in § 3553(a) are the following: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the applicable sentencing range under the Guidelines; and (5) any pertinent Sentencing Commission policy statement; (6) the need to avoid unwarranted sentence disparities among defendants; and (7) the need to provide restitution to victims. 18 U.S.C. § 3553(a). Put more succinctly, the statute requires the sentence imposed to be minimally sufficient to satisfy concerns of retribution, general deterrence, specific deterrence, and rehabilitation.

In the present case, the Petitioner moves this Court for a downward departure based upon his extraordinary post conviction rehabilitation efforts. The Petitioner recognizes that the First Circuit has narrowed this category to a considerable degree. In **United States v. Cavren,** the Court held that "[t]he touchstone of extraordinary rehabilitation is a fundamental change in actitute." 239 F. 3d 91, 100 (1st Cir. 2001).

Such fundamental changes occurred for example, in **United States v. Bradstreet,** 207 F. 3d 76, 81 (1st Cir. 2000) when, after sentencing, a defendant began tutoring other prisoners, teaching adult education classes in prison, serving as a prison chaplaint's assistant and clerk of a prison parenting program. See also, **United States v. Deshon,** 183 F. 3d 888 (8th Cir. 1999)(defendant radically altered his life, attending church four times a week, receiving counseling and working over seventy hours a week to catch up on his bills).

**a) Petitioner's Efforts at Rehabilitation Are Extraordinary.**

Here, Petitioner has maintained an unblemished record of institutional conduct since the day he entered the Bureau of Prisons, even though he has been assigned to the worse U.S. Penitentiaries. Rather than been involved in drugs and gang problems like other inmates. During this eight(8) years Petitioner has taken great strides toward self-improvement, by enrolling in and successfully completing the curriculum required for a certificate as Legal Assistant/Paralegal, from Blackstone Career Institute. [Please note that Blackstone is a private licensed law school]. [See Appendix of Exhibits for a copy of the certificate and congratulation letter]. Petitioner then applied his newly-acquired legal skills assisting fellow inmates with their personal and legal problems like child-support, complaints, marriages, divorses, power-attorney, and assisting their lawyers in the appeal process. [See e.g., letters from Attorney Charles K. Stephenson, P.O.Box 266, South Hadley, Ma. 01705, included in the Appendix of Exhibits].

In addition, Petitioner has also completed 200 hours of the Computers Program Microsoft Office 2000; and the following educational programs: Guitar Theory, 3-21-2000; Parenting Less, 3-23-2000; Running 250 mile class, 11-16-2001; Running 500 Miles Class, 1-26-02; Running 750 Miles Class, 5-3-2002; Running 1000 Miles Class, 6-8-02; Intro To Personal Finance, 7-11-2002; Legal Research, 10-2-02; Music Theory Class, 9-26-2003; Bass Guitar Class, 12-30-2003; Spanish Guitar, 1-13-2004; Piano Class, 2004; Advanced Yoga Class, 12-31-2003 up to 2004; Bookbinding, 7-10-2000. [See copy of Education Data Transcript and Certificates in the Appendix of Exhibits].

In addition to Petitioner's educational advancements, he has continually strived to improve his spiritual awareness and come closer to his Creator. Petitioner has completed two Bible Studies from La Escuela Lampara y Luz de Farmington, New Mexico and one Bible Study from the Institutional Chapel. [See copy of the Certificates in the Appendix of Exhibits].

Through these courses, Petitioner increased his understanding of Christianity and of the teaching of Jesus Christ. As a result, he has turned his life completely over to God, and accepted his predicament as the wages of his past sinful life. So pronounced is Petitioner's spiritual growth that he has written an Informative Bulletin about the religious-music development and has become to be the Bass-player and singer of the Spanish Gospel Group at the Institutional Chapel.

But Petitioner's extraordinary accomplishments do not end there. Since 1997, he has maintained steady employment within the Bureau of Prisons by working as unit orderly. Petitioner's evaluation reports reflect an outstanding level of work ethic and commitment to safety and quality assurance. [See Progress Report in the Appendix of Exhibits].

Of particular significance here is the fact that Petitioner is serving a life sentence at the time he has achieved his "extra-ordinary" accomplishments. This Court should recognize the unfortunate reality that is the extraordinary or exceptional inmate who makes positive use of this time of incarceration to effectuate a real, positive change in his or her life. Vega-Cosme is such an exceptional individual. In the eight (8) years since

31

his arrest, conviction and sentence, Petitioner has demonstrated an "extraordinary" and "exceptional" effort to address the causes of his illegal conduct, and equip his-self for a law-abiding life outside of the criminal justice system.

Therefore, Petitioner Vega-Cosme urges this Court to consider these efforts upon re-sentencing, if successful on the issues presented herein, and to sentence him to the lowest possible sentence.

## J. DOWNWARD DEPARTURE DUE TO MEDICAL CONDITION.

In addition to the previous claims, it is respectfully submitted that Petitioner was deprived his Sixth Amendment right to effective assistance of counsel because counsel failed to investigate and provide the trial court with medical testimony that would have supported a downward departure from the Guidelines due to his medical condition. See copy of medical record in the Appendix of exhibit.

In the instant case, the probation department and Petitioner's counsel failed to make a complete and adequate investigation of the Petitioner's health that would have supported a downward departure from the guidelines due to a medical condition. The Petitioner was a drug addict during part of his life and when he was housed at MDC-Guaynabo he was diagnosed with hepatatis C. This is a chronic disease that will never heal. This eventually goes from one stage to another one and can develope into liver cancer.

Petitioner's counsel could have but did not investigate U.S.S.G. § 5K2.0 and 5H4 which provides for downward departure based on "physical impairment". Petitioner's condition is serious enough to justify a departure. Counsel's omission set forth here were the result of counsel's abdication of the duty and responsibility to

32

advocate Petitioner's case and cause during the sentencing process. **Glover v. U.S.**, 531 U.S. 198 (2001).

### III  CONCLUSION

Based on the foregoing arguments and authorities, the record in this case and, the Appendix of Exhibits, this Honorable Court is respectfully urged to grant Petitioner Vega-Cosme's motion to vacate the sentence, or, at minimum grant Petitioner an evidentiary hearing on the instant motion.

5/20/05
Dated:

Miguel A. Vega-Cosme, pro-se
Reg. No. 03648-069
Federal Correctional Complex
P.O.Box 1033
Coleman, FL 33521-1033

## CERTIFICATE OF PRO-SE COUNSEL

I, Miguel A. Vega-Cosme, pro-se, certify under penalty of perjury that all the foregoing is true and correct to the best of my knowledge and belief.  28 U.S.C. § 1746.

5/20/05
Da{ted:

Miguel A. Vega-Cosme pro-se
Reg. No. 03648-069
Federal Correctional Complex
P.O.Box 1033
Coleman, FL 33521-1033

34